298 So.2d 75

**Major ROBINSON**

v.

**STATE.**

**3 Div. 242.**

Court of Criminal Appeals of Alabama.

June 25, 1974.

Rehearing Denied July 16, 1974.

George W. Cameron, Jr., Montgomery, for appellant.

William J. Baxley, Atty. Gen., and Don C. Dickert, Sp. Asst. Atty. Gen., for the State.

HARRIS, Judge.

This is another interracial rape case. Robinson was represented at arraignment and trial by court-appointed counsel. The jury fixed his punishment at life imprisonment in the penitentiary. Other counsel was appointed to represent him on appeal, and he is here with a free transcript.

The facts are not in dispute as to the actual rape. Appellant's defense was an alibi but he did not testify.

Around 2:00 A.M. on May 12, 1973, the prosecutrix was in an automobile alone on the exit street from I-85 and was stopped at the traffic light at Union Street. A black male walked up to the driver's side of her car and said he was lost and needed a ride and she told him, "No." She was frightened and glanced to see if she could safely run the red light. She heard a tapping on the glass window of the door and looked around and saw a pistol pointed directly at her and the man had his other hand on the door handle. With the gun still pointed on her, he ordered her to open the door. This order shocked her so that she just sat there. He shouted, "Open the door", and she unlocked the door. He pushed her around and crawled over her to the passenger side. When the door was opened the dome light came on and she got a close-up view of this man. He still had the pistol pointed at her and said, "Do exactly what I tell you, or I'll shoot you." He directed her to drive up Union Street. After going about two blocks, he ordered her to back up and turn into an area off Union Street and park in a vacant lot. He made her kill the engine and cut off the car lights. He made her take off all of her clothes and while she sat there in the nude, he used vile language toward her. He put her down on the car seat and penetrated her while holding the pistol at her head. After gratifying himself he made her get out of the car and use her clothing to wipe off the door to the driver's side and the inside of the car. He then took her clothing and wiped off his body. He ordered her to dress and drive him back to the area where he had kidnapped her. While driving to this place he told her that he knew her and knew how to get in touch with her and if she notified the police he would have her killed. When he got out of the car, she was crying and was hysterical. She drove to her apartment and waked her roommate and told her she had just been raped. Her roommate called the Montgomery Police Department and reported the incident.

The prosecutrix called her family doctor and he told her to meet him at the hospital. She called her parents and they accompa-

nied her to the hospital. After leaving the hospital she stopped by her apartment and changed clothes. She put all the clothing she was wearing on this occasion in a bag and carried them to the Police Headquarters. At the Police Department, she was shown a number of mug shots or photographs. She had no difficulty picking out a photograph of appellant, and he was arrested. A few days later a line-up was conducted and the prosecutrix unhesitatingly picked out appellant as her assailant. Furthermore, she made a positive in-court identification.

At the hospital her physician conducted a vaginal examination and obtained a specimen from her vagina and made a slide and found what he thought to be sperm on the slide. He then irrigated the vagina with a saline solution and it was retained for a more definitive analysis and when this was examined by microscope the doctor found mobile sperm in large quantities. The doctor also found and retrieved two black hairs which were meshed in and adherent to the pubic hair of the prosecutrix. A laboratory examination of these hairs revealed them to be Negro pubic hair.

The doctor described the patient as being very apprehensive and emotionally upset and was most reluctant to mention her experience and ordeal. She was draped for a pelvic examination and he found some abrasions and brush burn-like lesions particularly in and around the vagina, and on the vulva there were small abrasions suggestive of some injury or trauma. The slides and the other material collected by the doctor were turned over to an assistant state toxicologist who came to the hospital upon request.

The officers delivered to this same assistant state toxicologist all of the clothes worn by the prosecutrix when the offense was committed including a blouse, bra, underpants, and a pair of stretch pants. This witness conducted a laboratory examination of these garments. On the blouse were three white stains and a complete analysis of these stains revealed the presence of spermatozoa and also two hairs were removed and found to have characteristics common to Negro head hairs.

The toxicologist conducted a laboratory examination of the panties that the prosecutrix was wearing at the time of the incident and the toxicologist testified:

"The crotch area contained a large area of a reddish-brown stain. I removed several portions of this piece of material from the panties and examined them, as I have explained before, soaked them in a saline solution to remove the stain, and examined the stain separately. Upon this analysis, I found the presence of spermatozoa in all three areas; this is the stain and sperm cell in all three areas. (Indicating).

"I further removed seven hairs from these panties, all seven of the hairs on microscopic analysis revealed characteristics common to Negro head hairs. There were two light brown hairs removed also from the panties. These hairs revealed characteristics common to a light-brown Caucasian hair. And that's all that was removed."

The slacks worn by the prosecutrix were laboratory tested and the testimony was as follows:

"Yes, sir, I removed 8 hairs from this pair of slacks; two of the hairs were determined to be of nonhuman or of animal origin; one of the hairs was a light-brown Caucasian hair, bearing characteristics common to Caucasian head hair; the remaining five hairs had characteristics common to Negro head hair."

We have gone to some length in setting out the scientific evidence in the light of appellant's motion to exclude the state's evidence on the ground the state failed to prove a prima facie case against him. The testimony of the doctor and the toxicologist is strongly corroborative of the testimony of the prosecutrix. The state's evidence, if believed by the jury to the required degree, and it was so believed, made

a clear cut case of an aggravated case of rape. The court properly overruled appellant's motion to exclude. To disturb the verdict of the jury in this case is wholly unwarranted.

We do not mean to imply that it is necessary that the testimony of the prosecutrix be corroborated. Such is not the rule. The jury may convict upon the prosecutrix' evidence alone if such evidence convinces the jury beyond a reasonable doubt that the accused is guilty. White v. State, 37 Ala.App. 448, 70 So.2d 287.

The clothing worn by the prosecutrix at the time of the alleged rape was properly received in evidence. Chancellor v. State, 38 Ala.App. 89, 80 So.2d 313; Cox v. State, 280 Ala. 318, 193 So.2d 759.

Evidence as to the custody and possession of this clothing unequivocally shows there is not a missing link in the chain of identification. Powell v. State, 47 Ala. App. 582, 258 So.2d 923; Owens v. State, 291 Ala. 107, 278 So.2d 693.

The case is due to be affirmed.

Affirmed.

ALMON, TYSON and DeCARLO, JJ., concur.

CATES, P. J., not sitting.