Appellant was convicted of rape and the jury fixed his punishment at fifteen years in the penitentiary. Prior to arraignment appellant was found to be indigent and the Court appointed counsel to represent him. He interposed a not guilty plea. After he was sentenced he gave notice of appeal and was furnished a free transcript. Trial counsel was appointed to represent him on appeal.
The evidence was extremely conflicting. The State made out a case of rape by the testimony of the victim alone. Appellant did not testify but offered an alibi defense.
The prosecutrix was a seventeen year old black girl. Appellant was also black. On May 25, 1976, around 10:30 a.m. prosecutrix was on a public street in downtown Birmingham looking for part-time employment. She went to the Army Recruiting Center on Eighteenth Street to meet a friend but this person did not show up. She then walked up Second Avenue to a clothing department store and called her boyfriend to let him know she was downtown. After making the telephone call she was approached by a man whom she later identified as appellant. Appellant asked her name and she told him and stated she was looking for a job. He offered to take her to a place that was employing black girls and she told him she would check it out later. He then offered to buy her lunch and she declined. She started walking up the street and she noticed that he was following her. At some point she thought she had lost him.
A short time later and some distance away appellant called her over to a green colored Buick LeSabre. When she approached the car appellant showed her what appeared to be the barrel of a gun and ordered her to get in the car. The gun was pointed in her direction and she got in the car. Appellant drove her toward Woodlawn and she asked him where he was going and he replied that he was taking her to see about the job he told her about earlier. She stated appellant was drinking gin and offered her some but she didn't want a drink. Appellant then pulled out two twenties and a ten and placed the fifty dollars on the seat between them. He told her to pick up the money and she told him she did not want the money. He then put another twenty and a one dollar bill with the other money. Appellant had put the pistol between his knees while he was driving and when he put the other money down he told the prosecutrix to pick it up. She picked it up and put it on the seat again. Appellant picked up the money and put it in his pocket.
Appellant then drove to a secluded place near a fence on a dead-end street and stopped his car. While parked he examined the contents of the victim's purse which contained her identification and address. This was her social security card and he told her she had given him her correct name. He then reached in the glove compartment and got what appeared to be a butcher knife that had been recently sharpened. He put the knife to her throat and touched her skin. He told her not to be afraid or upset, "that it would just be enough to show blood." Appellant then got out of the car on the driver's side and ordered the victim to get out on the same side. After she was out of the car appellant reached into the car and got one of two blankets. *Page 370 
With the knife still in his hand he ordered the victim to lie on the blanket and to pull down her underclothes. He then put his private part into her private part and had sexual intercourse with her. After completing the sexual act he told her to pull her clothes up and get back in the car. He told her he was going to take her back to town and that if she called the police he would get to her before the police did because he knew where she lived. When he drove her back to town, and as she was getting out of the car, appellant said, "Just remember what I told you about the cops." The victim reported the incident to the police the next morning, May 26, 1976.
The night following the assault upon her she told her boyfriend that a man had tried to rape her but later told him the man actually raped her.
On May 27, 1976, Police Officer Juanita Eaton showed the victim seven photographs and asked her to look through them to see if she recognized anyone. She identified appellant as the man who raped her and she had a warrant issued for his arrest. She also made a positive in-court identification of appellant and based this identification on having viewed appellant in broad daylight on the day she was forced to get in his car.
The prosecutrix was subjected to a vigorous cross-examination and many inconsistencies were pointed out in her testimony. This all went to the weight and credibility of her testimony, but the jury, nevertheless, gave full credit to her testimony.
The next time the victim saw appellant was on June 1, 1976, on a downtown street in Birmingham and she immediately called Officer Eaton who put out a broadcast and appellant was taken into custody.
At the conclusion of the State's case appellant moved for a directed verdict without stating any grounds. This motion was overruled.
Appellant's wife testified she had the automobile the entire day of the alleged incident. She drove the car to her place of employment at the usual hour that morning and returned home some time after 3:00 p.m. She further testified there were only two set of keys to the car. She had one set and her mother had the other set. She said that her husband was at home that morning when she left for work and he was at home that afternoon when she returned.
Sisfornia Moore, the grandmother of appellant's wife, testified that she lived across the street from appellant and that the car was not in the yard all day.
Appellant makes much of the fact that he was convicted on the testimony of the prosecutrix without any corroboration. He complains that the alleged victim did not report the alleged rape to her relatives, did not report it to the police until the next day, and did not seek medical help.
In Robinson v. State, 53 Ala. App. 145, 298 So.2d 75, we held:
 "We do not mean to imply that it is necessary that the testimony of the prosecutrix be corroborated. Such is not the rule. The jury may convict upon the prosecutrix' evidence alone if such evidence convinces the jury beyond a reasonable doubt that the accused is guilty. White v. State, 37 Ala. App. 448, 70 So.2d 287."
During appellant's cross-examination of the prosecutrix, the following occurred.
"Q. Are you married, Ms. Fuller?
 "MR. JOHNSON: Judge, I'm going to object to that. I don't see how it has got anything to do with this case.
"THE COURT: Sustained.
 "MR. LYERLY: Judge, we would except to that on the basis it is a background question.
 "THE COURT: I will sustain it. Don't answer it. I don't mind your asking her about her marital state at the time of this but what it is now, I think is immaterial.
 "Q. All right. Were you married on May 25th of last year?
"A. No.
 "Q. I'm sorry, I didn't get your address on May 25th of last year.
"A. 320 Second Street, West.
"Q. And did you have any children as of May 25th? *Page 371 
 "MR. JOHNSON: Judge, I am going to object to that. I certainly can't see —
"THE COURT: Sustained."
Appellant contends that these "background" questions were proper for the purpose of setting before the jury an estimate of the witness' testimony. Therefore, questions relating to the witness' "condition in life" are permissible. Shepherd v.Gardner Wholesale, Inc., 288 Ala. 43, 256 So.2d 877 (1972). Appellant notes that it was held proper to ask a female witness in a criminal case whether she was a widow. Cooper v. State,63 Ala. 80 (1879). Appellant stresses that such questions are the foundation for exposing falsehoods and bringing out the truth on cross-examination. Smith v. Illinois, 390 U.S. 129,88 S.Ct. 748, 19 L.Ed.2d 956 (1968). These background questions, though irrelevant, may have a bearing on the credibility of a witness.Nesbitt v. State, 55 Ala. App. 534, 317 So.2d 501. Appellant concludes that since the prosecutrix's testimony was the sole basis for his conviction, the above questions were essential in aiding the jury in an evaluation of her credibility.
We do not agree. The scope of cross-examination in a criminal proceeding is within the discretion of the trial judge and it is not reviewable except for the trial judge's prejudicial abuse of discretion. Jackson v. State, Ala.Cr.App.,353 So.2d 40, cert. denied, 353 So.2d 48 (1977). McFerrin v. State, Ala.Cr.App., 339 So.2d 127 (1976). The right to a thorough and sifting cross-examination of a witness does not extend to matters that are collateral or immaterial and the trial judge is within his discretion in limiting questions which are of that nature. McLaren v. State, Ala.Cr.App., 353 So.2d 24, cert. denied, 353 So.2d 35 (1977); McDonald v. State, Ala.Cr.App.,340 So.2d 103 (1976).
It is not apparent how these two questions asked by appellant have any bearing on the credibility of the prosecutrix's testimony unless appellant hoped to impugn the character of the prosecutrix through her responses. Whether the victim was married or had children is wholly irrelevant to the issues of the trial. Therefore, the district attorney's objections were properly sustained.
Smith, supra, and Nesbitt, supra, are distinguishable from the case at bar on the facts. In Smith, the defendant asked a State's witness whether the name he had given on direct examination was false. After the witness responded there that was not his true name, the defendant was not allowed to ask the witness his correct name or residence. Of course, in that unusual set of circumstances, the witness' credibility was drawn directly into question, meriting further "background" questions. Similarly, Nesbitt, concerned the cross-examination of a narcotics agent, relating to his employment in that capacity. The questions asked of the agent and another police officer directly concerned the witness' memory, accuracy, credibility, interest and sincerity.
The following also occurred during appellant's cross-examination of the prosecutrix.
From the record:
 "Q. Ms. Fuller, did you tell your boyfriend someone had only tried to rape you?
 "MR. JOHNSON: Judge, I'm going object to the question.
 "MR. LYERLY: Judge, it is a relevant fact whether she, in fact, was raped or not and to the questions of identity.
 "THE COURT: Overruled — pardon me, sustained. I'm sorry.
"MR. LYERLY: We except."
No error resulted, for the trial court subsequently changed its ruling and allowed counsel to follow that line of inquiry. Thus the error, if any, was cured by the subsequent admission of the same evidence. Simmons v. State, Ala.Cr.App.,353 So.2d 11, cert. denied, 353 So.2d 18 (1977).
Additionally, appellant contends that the trial court erred in not permitting him to question the prosecutrix's motive in identifying him as her assailant.
From the record:
 "Q. Ms. Fuller, you have testified already you told your boyfriend about the rape, alleged rape? *Page 372 
"A. Yes.
 "Q. Did he at that time insist that you go to the police?
 "MR. JOHNSON: I am going to object to what he insisted on.
 "Q. I will rephrase that, Judge. Did he take you to the police the next day?
"A. Yes, we went together.
"Q. And had he insisted that you go to the police?
"MR. JOHNSON: I am going to object on that.
"THE COURT: Sustained. Don't answer.
 "Q. All right. Ms. Fuller, when you — as you have testified, you advised your boyfriend of this attempted or alleged rape. Did he react violently to that news?
 "MR. JOHNSON: Now, Judge, I'm going to object to —
"THE COURT: Sustained. Don't answer it.
 "Q. Ms. Fuller, were you afraid of what your boyfriend might do if you did not identify your alleged assailant?
"MR. JOHNSON: I am going to object to that.
"THE COURT: Sustained.
 "MR. LYERLY: Judge, we argue she can testify to a state of mind she had at the time which we thought she could do under Starr v. Starr.
"THE COURT: Starr v. Starr is undisclosed intention.
 "MR. LYERLY: Well, state of mind, Your Honor, which we would suggest is relevant to the question of motive for identification.
"THE COURT: I will sustain the objection."
The cross-examiner is allowed great latitude in questioning a witness to ascertain his motive in testifying. Noble v. State,253 Ala. 519, 45 So.2d 857; Williams v. State, 44 Ala. App. 503,214 So.2d 712. Particularly, a witness for the prosecution may be cross-examined to ascertain whether the testimony given on direct was motivated by fear, intimidation, or prompting by another person. Hammock v. State, 7 Ala. App. 112, 61 So. 471.
Here the trial court was not in error. The rule is well established that when an objection is sustained to a question asked on cross-examination, the questioning party must make an offer of proof, calling the attention of the court to the expected answer and the materiality of the answer. Otherwise, the party cannot predicate an appeal upon the sustaining of the objection as an erroneous ruling. Gamble, McElroy's AlabamaEvidence, 3rd Edition, Section 425.01 (4). Bryer v. State,34 Ala. App. 561, 42 So.2d 496, Sellers v. State, 7 Ala. App. 78,61 So. 485.
Appellant urges that the trial court erred to reversal by overruling his objection to a question asked by the district attorney of the prosecutrix, who answered unresponsively. An objection for lack of responsiveness in an answer is available as a matter of right only to the party asking the question.Dawson v. State, 48 Ala. App. 594, 266 So.2d 806, cert. denied289 Ala. 741, 266 So.2d 812.
Next appellant contends it was error to allow in evidence a statement made by him at the time of his arrest.
Charles Melton testified that on June 1, 1976, he arrested appellant. At that time the prosecutrix and another police officer were present nearby, and appellant looked in their direction. When asked if the appellant said anything about the prosecutrix, appellant objected and a voir dire hearing was held outside the presence of the jury. The following occurred at that hearing.
From the record:
"BY MR. JOHNSON:
"Q. All right. Where did you arrest him?
"A. At the A P Store.
"Q. What happened, then?
 "A. I arrested him, I transported him to the detective lot there across from the Greyhound Bus Station.
 "Q. Were you in radio contact with Officer Eaton at that time?
"A. Yes, sir, I was. *Page 373 
 "THE COURT: When you arrested him, what was said? What did you say when you arrested him? What was said? What did you tell him? What did you say, come let's just go for a Coke, or what?
 "A. No, sir. I told him he was under arrest and you are charged with rape.
"THE COURT: All right. Okay.
 "Q. When you got him over there to the parking lot, did you see Officer Eaton?
"A. Yes, sir.
 "Q. Did you see Ms. Fuller, the girl that was in here a little earlier?
"A. Yes, sir.
"Q. Did the defendant see them at that time?
"A. Yes, sir.
 "Q. Now you didn't question him at that time, did you?
"A. No, sir.
 "Q. Did you tell him that he was charged with raping that girl?
"A. No, sir.
 "Q. Did you tell him anything other than when you initially arrested him other than he was arrested for rape?
"A. I read him his rights in the car.
"Q. But you weren't questioning him, were you?
"A. No, sir.
 "Q. Did you hear him say anything in regard to that woman or did he volunteer anything in regard to that Shirley Fuller?
"A. Yes, sir.
"Q. What did he say?
 "A. He said if she was going to get a warrant for me, why didn't she do it yesterday.
"THE COURT: Okay. Now you hadn't asked him anything?
"A. No, sir.
"THE COURT: And this was in the parking lot?
"A. Yes, sir.
 "THE COURT: And nobody brought up anything or had done anything?
"A. No, sir.
 "THE COURT: I think it is a spontaneous exclamation . . ."
Appellant notes that a "spontaneous exclamation" must be the reflexive product of the preception of an event, made in a state of nervous excitement. Williams v. State, 291 Ala. 213,279 So.2d 478; Illinois Central Railroad v. Lowery, 184 Ala. 443,63 So. 952. Appellant's statement meets this requirement. He urges that, even though the statement may be a spontaneous exclamation, to be admissible the utterance must be relevant and material to the issues at trial.
The trial judge allowed appellant's statement into evidence before the jury.
This statement is relevant in that it tends to show some prior relationship of the parties. Appellant volunteered this statement after looking in the direction of the prosecutrix, though he had not been told that he was charged with raping her.
Rape is the unlawful carnal knowledge of a woman by a man, forcibly and against her will. Gulley v. State, Ala.Cr.App.,342 So.2d 1362; Smith v. State, Ala.Cr.App., 345 So.2d 325, cert. quashed, ex parte State, 345 So.2d 329. The offense of rape is complete when the woman is made to yield through fear.Rudolph v. State, 275 Ala. 115, 152 So.2d 662, cert. denied,375 U.S. 889, 845 S.Ct. 155, 11 L.Ed.2d 119; Hooper v. State,106 Ala. 41, 17 So. 679. The testimony of the victim clearly supports a finding that she yielded to appellant out of fear for her life and is ample to support a conviction for rape.
Though the appellant offered evidence tending to show that he was at another place at the time the incident occurred, this presented a jury question, as does all conflicting evidence.Mullins v. State, Ala.Cr.App., 344 So.2d 539.
A search of the record reflects no error injuriously affecting the substantial rights of appellant. The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur. *Page 374