HARRIS, Presiding Judge.
Appellant was indicted by the Grand Jury of Madison County for rape. Prior to trial, appellant, being nineteen years of age, applied to be arraigned as a Youthful Offender. The trial court denied appellant’s request upon the probation officer’s report. Subsequently, in the presence of counsel, appellant entered a plea of not guilty to the charge against him. Having been tried by *1328 a jury, appellant was found guilty and sentenced to ten years of imprisonment in the penitentiary. The trial court, finding appellant to be indigent, appointed trial counsel to represent him on appeal, and ordered that he be provided a free transcript.
The sole issue on this appeal pertains to the sufficiency of the evidence to sustain appellant’s conviction. The facts of the case are summarized below.
The prosecutrix testified that she lived in Apartment E at 1411 Highland Avenue, Huntsville, Alabama. On November 17, 1977 she was awakened at about three o’clock a. m., by someone pounding on her door. When the prosecutrix asked who was there, she was told, “Police.” She opened her door, only to be confronted by a man, armed with a pistol, who forced his way into the apartment. At trial the prosecu-trix identified the intruder as appellant. She had seen him on a previous occasion when he was doing repair work in the apartment of one of her friends.
Following his entering the apartment, appellant placed the gun to the victim’s head, ordering her to undress him and then herself. Over the next hour and a half, appellant forced the prosecutrix to commit numerous acts of sexual intercourse upon him in various positions.
Appellant also shaved her pubic hair. At one point, appellant placed his pistol to the prosecutrix’s vagina, threatening to “blow that thing off” if she made any noise. Some time later, appellant ordered the pros-ecutrix to perform an act of fellatio on him, and, while his victim was about this task, he fell asleep. The victim, having made sure that appellant was asleep, left her apartment and called the police.
Appellant was the son of Mrs. Morris, the apartment manager. According to the testimony of the prosecutrix, none of the sexual acts committed by appellant was done with her consent. On the contrary she testified appellant called her a bitch and threatened her life on several occasions.
Billy Clardy testified that he was a policeman for the City of Huntsville, Alabama. On November 17,1977, Clardy testified, he answered a call to find the prosecu-trix barefoot and dressed in a robe; she told him that she had been raped. Proceeding to the prosecutrix’s apartment, Clardy found appellant naked and asleep on a mattress; a loaded pistol, out of its holster, was lying beside him on the floor. Clardy woke up the appellant, with some difficulty, and read him his “rights.” Appellant then made the following statement, which was read into the record without objection and admitted into evidence by the appellant.
“I went to see my sister that lives in apt. ‘D’, but she was asleep. I started, but noticed Linda standing on the steps in front of her apt. Her door was open and all the lights were on. She started waving for me to stop. I pulled over to the curb and got out. I walked up to where she was standing on the steps. I asked her what she wanted. She said she just wanted someone to talk to. I told her what the hell, I had until 7 o’clock in the morning. I went back to my — truck and got my pistol so no one would steal it. I walked back to where she was standing. She said, ‘Let’s go inside.’ We went into her apt and sat on the couch. We talked for about forty-five minutes. We started moving closer together. She opened her housecoat. She did not have anything else on but the housecoat. We started kissing and I began to let my hands roam. She did not try to stop me. We got up and went to the bedroom. She took off her housecoat and laid down on the bed. I took off my clothes and laid down with her. We then made love several times. She told me to wait a minute because she wanted to get the vasline (sic). She got up and went into the bathroom. She came back to the bed with a small jar of vasline (sic). We made love again then I fell asleep. The next thing I knew two police officers were wakeing (sic) me up.”
Larry Gillespie testified that he was employed as a policeman by the City of Huntsville, Alabama. Gillespie responded to a call with his partner, Clardy, on November 17,1977. Gillespie testified that, when they arrived on the scene the prosecutrix was *1329 “very frightened. She looked like she had been abused. She was disoriented; she was real frightened.”
James Parker testified that he was a Crime Scene Technician for the City of Huntsville. On November 17, 1977 Parker went to the victim’s apartment, where he took several photographs, depicting a razor in a trash can, hair in the toilet, and including a photograph of the front door of the apartment. These photographs were all admitted into evidence without objection. A piece of bread, which the prosecutrix testified appellant stuffed in her mouth to prevent her from yelling for help, and samples of the hair found in the toilet bowl were also admitted into evidence without objections.
Winnie Bailey testified that she was employed by the City of Huntsville Police Department. On November 17, 1977 Ms. Bailey carried the prosecutrix to the Emergency Room of Huntsville Hospital. There, Ms. Bailey observed a scratch between the pros-ecutrix’s eyes, bruises on the inside of the upper and lower lip, a small cut under her tongue, bruises and abrasions on the front of both shoulders, scratches on her back and sides, and a small v-shaped cut in the pubic area where it had been shaved.
Dr. Dallas B. Reynolds testified that he treated the victim on November 17, 1977. In addition to the bruises, cuts, and scratches seen on the prosecutrix by Officer Bailey, Dr. Reynolds observed bruising about the breasts. Dr. Reynolds also testified that saline slides used in an acid phosphatase test did not reveal the presence of sperm.
The State rested, and the Court asked if there were any motions and appellant’s counsel said, “No, sir.” The Court then said: “The defendant moves to exclude the evidence on the grounds that the State has failed to make out a prima facie case, and I overrule the motion.”
Three character witnesses testified on behalf of the appellant that he had a good general reputation in the community and that they would believe him under oath.
Cynthia Mills testified that the victim told her in a conversation that appellant had gained access to her apartment by a key.
Jean Morris testified that she was appellant’s mother and that she managed the apartments in which the prosecutrix lived. Mrs. Morris testified that there were no rules at the complex concerning tenants’ installation of safety locks or chains. Mrs. Morris further testified that appellant did not have access to a master key unless she or her husband was with him.
Appellant James D. George testified substantially to what appeared in the statement given by him to the police at the scene. However, appellant further testified that he had had sexual relations on several occasions with the prosecutrix and that he did so on this occasion with her consent. According to appellant the prosecutrix alone shaved her pubic area. Appellant further testified that he noticed no bruises, abrasions, cuts or scratches on the victim’s person and did not know how she came to have them. Appellant also testified that he did not reach a climax during sexual relations with the prosecutrix.
Appellant, on one occasion, did some maintenance work in the victim’s apartment with his stepfather, Arthur J. Morris. At that time he saw three or four black and white pictures of prosecutrix. The pictures were on the kitchen table. These pictures, appellant testified, depicted the prosecutrix in the nude, lying around with another girl and a man, engaged in sexual acts.
Arthur J. Morris, appellant’s stepfather, also testified to seeing photographs of the prosecutrix in her apartment, when he was there with appellant. However, these pictures were “in color,” Morris testified. Morris testified that he did not see a photograph of three people in a bed, only photographs of the prosecutrix and another man.
In rebuttal, the State recalled Mrs. Morris who testified that a clause in the lease for that apartment complex did prohibit tenants from installing locks or chains. The prosecutrix testified that new locks were put on her apartment at her request. *1330 A copy of this lease was admitted into evidence without objection.
In Gulley v. State, Ala.Cr.App., 342 So.2d 1362, at 1364, we find the following language:
“. . . Rape is the unlawful carnal knowledge of a woman by a man forcibly and against her will. Harris v. State, Ala.Cr.App., 333 So.2d 871 (1976). The victim herself testified that the appellant had sexual intercourse with her and that such intercourse was accomplished by force and against her will and consent. This, if believed by the jury, was sufficient to sustain a conviction for rape. Williams v. State, Ala.Cr.App., 335 So.2d 249 (1976).”
Although appellant’s testimony is in direct conflict with the testimony of the prosecutrix on issue of consent, the substantial evidence presented by the State established all the elements of the charge and the trial court properly overruled appellant’s motion to exclude, which was made by the trial judge himself. Conflicting evidence always presents a jury question unless the evidence palpably fails to make out a prima facie case. Gulley, supra, at 1365. For numerous other authorities for the same proposition see Alabama Digest, Criminal Law, 1159.3(2).
A careful search of the record reflects no error injuriously affecting the substantial rights of the appellant. The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.