Rape; sixty years.
Doctor T.K. Byrne testified that he examined the prosecutrix, a blonde, around midnight November 19, 1979, in the emergency room of Baptist Hospital in Montgomery. He stated that the prosecutrix told him that between 6:40 and 8:00 P.M. that evening she had been tied with a rope, dragged into a corn field near her home in Brundidge, and repeatedly raped. Dr. Bryne's examination revealed the following: a rope burn around the prosecutrix' neck; a knot on one side of her nose; several bruises on her back; a three-quarter inch laceration in her vagina accompanied by a small amount of bleeding; and evidence of recent sexual intercourse.
Ms. Lacy Ann Mitchell testified that on the night in question she worked at a store near the prosecutrix' home. Around 6:30 P.M. the prosecutrix entered the store and asked Ms. Mitchell for a ride home. Ms. Mitchell gave the prosecutrix a ride on her motorcycle to an intersection approximately one-half mile from the prosecutrix' home.
The prosecutrix testified that after being dropped off at the intersection by Ms. Mitchell, she began walking home and sensed something behind her. When she turned, a man put his hand over her mouth and told her not to scream or he would kill her. The prosecutrix identified the appellant as her assailant. She stated that they fought and the appellant knocked her down. He placed a rope around her neck and dragged her by her hair and the rope about twenty-five yards to the edge of a corn field and a wooded area. He tied her hands behind her back, removed her bluejeans and panties, placed his toboggan over her head, and raped her three times.
The prosecutrix stated that the appellant talked to her a great deal, and that she talked back to him, saying whatever he wanted her to say so that she could get away from him.
As soon as the appellant let her go, she ran to her sister's house. The prosecutrix told her family that she had been assaulted but she did not mentioned being raped. She notified the Brundidge Police Department of her attack and gave them a description of her assailant.
The Brundidge Police picked up the appellant about 3:45 A.M., on November 20 as he was hitchhiking.
Pike County Sheriff Harold Anderson, with the assistance of the prosecutrix, searched the area where the rape occurred and found some footprints in a ditch on the side of the road. Sheriff Anderson testified that he observed the appellant's shoes and had made footprint comparisons several times in the past. He measured the length and width of the footprints found in the ditch as well as the dimensions of the appellant's shoes and concluded that the footprints pointed out by the prosecutrix were made by the appellant's shoes.
On voir dire examination, Sheriff Anderson testified that on November 20, around 4:00 A.M., the appellant was given hisMiranda warnings and signed a waiver of rights form. No inducement, promise, hope, or reward was offered to the appellant. Sheriff Anderson testified that the appellant was in custody although he had not been arrested. He did not inform the appellant of the crime under investigation, but told him "that somebody had caught a girl" below town and that his description fit the one that had been given to him.
Pike County Deputy Sheriff Don Herring testified on void dire examination to a second statement made by the appellant on November 20, 1979, around 8:00 A.M. The appellant had been in custody about four hours. Deputy Herring gave the appellant hisMiranda warnings. He testified that no inducement, promise, hope, or reward was made to the appellant to make the statement. The appellant signed a waiver of rights form. Deputy Herring told the appellant that a girl had been raped in the area and that they had a good description of the assailant. He informed the appellant *Page 290 
that he was taken into custody and arrested because he was suspected of committing the crime. Deputy Herring asked the appellant if he wanted to make a statement to which the appellant replied that the had done nothing wrong. The appellant then made a statement which he wrote and signed.
In the presence of the jury, Sheriff Anderson and Deputy Herring repeated their voir dire testimony concerning the appellant's statements. Both statements were admitted into evidence and read to the jury. In the first statement, the appellant said that he had arrived in the area before dark on November 19, 1979, and slept in a ditch alongside Highway 231. The appellant did not see any girls on a motorcycle and did not molest any girl. He stated that no one had worn his toboggan and some blonde hairs found in it were not his. The appellant consented to a search of his travel bag.
In the second statement, the appellant admitted that he was standing by the side of the road when a motorcycle with two girls on it came by. One of them got off the motorcycle and started walking down the road. The appellant approached her and spoke. They talked for a while and the appellant asked the girl if she wanted to have sex, to which he said she affirmatively replied. The appellant stated that they continued to walk down the road and talk. He said they went into a field where the girl disrobed and they had sex. The appellant stated that they kissed, the girl expressed a desire to see him again, and then she went into her house and he walked back to the highway. He said he walked down the highway until he got tired and had to sleep. A noise awakened him and he continued to walk. Shortly thereafter he was picked up by the police.
The contents of appellant's travel bag were admitted into evidence, including a piece of rope, a toboggan, and appellant's clothes.
Mr. William Landrum, a criminalist for the Department of Forensic Sciences was called to the witness stand to testify to analyses he had performed on items and specimens gathered in the instant case. Landrum said that his examination revealed the presence of semen on the appellant's underwear of the same type found in the prosecutrix and on her panties. He also found traces of blood on the rope belt but could not identify it.
At the conclusion of the State's case the appellant moved to exclude the evidence, and the motion was denied.
The appellant called Brundidge Police Officer Lige Hester to the witness stand. He testified that on November 19, 1979, between 7:00 P.M. and 7:30 P.M., he heard a bulletin on his police radio monitor at home concerning the instant incident. On November 20, around 3:34 A.M., he received a radio dispatch apparently concerning the location of someone fitting the description of the suspect. Officer Hester drove to a point about one hundred and fifty to two hundred yards from the intersection of Highway 231 and County Road 2 and picked up the appellant. The appellant fit the description broadcast earlier. He advised the appellant that they checked all hitchhikers in their jurisdiction. Officer Hester transported the appellant to the police station where they met Sheriff Anderson. The appellant made his first statement in Officer Hester's presence with Officer Hester writing what the appellant said. After its completion, the appellant read and signed it.
Officer Hester testified that the blonde hairs discussed in the statement refer to those found on the appellant's toboggan. He stated that Sheriff Anderson advised the appellant of his rights and what crime he was suspected of committing.
Officer Hester's testimony concluded the presentation of the appellant's case.
 I
Appellant contends that the trial court erred in admitting his two statements. He argues that the waiver of his Miranda
rights was not knowingly and intelligently made because he was not informed that he was a rape suspect. *Page 291 
The question whether a confession or inculpatory statement was voluntarily made is one of law, to be determined by the trial judge. Harris v. State, 280 Ala. 468, 195 So.2d 521
(1967); Bufford v. State, Ala.Cr.App., 382 So.2d 1162, cert. den., Ala., 382 So.2d 1175 (1980); Crawford v. State, Ala.Cr.App., 377 So.2d 145, affirmed, Ala., 377 So.2d 159
(1979). The trial court need only be convinced from a preponderance of the evidence to find a confession or inculpatory statement to have been voluntarily made. Lego v.Twomey, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972);Bufford, supra. The totality of the circumstances determines whether the accused has knowingly and intelligently waived his rights to assistance of counsel and to remain silent. Crawford, supra; Rodgers v. State, Ala.Cr.App., 365 So.2d 322, cert. den., Ala., 365 So.2d 334 (1978); Sullivan v. State, Ala.Cr.App., 351 So.2d 659, cert. den., Ala., 351 So.2d 665
(1977).
A defendant need not be apprised of the charge against him before he can knowingly and intelligently waive his rights and make a voluntary statement. Crawford, supra; Jemison v. State,49 Ala. App. 289, 270 So.2d 836 (1972).
In the instant case, the record fully establishes the complete voluntariness of the appellant's statements. HisMiranda warnings were thoroughly covered and no improper influence, threat, intimidation, inducement, promise or hope of reward was made to obtain his statements. Bufford, supra;Cummings v. State, Ala.Cr.App., 374 So.2d 421 (1979). Consequently, both statements were properly admitted into evidence.
 II
Appellant contends that the trial court erred in refusing to give several of his written requested charges asserting that sexual abuse in the first degree is a lesser included offense of rape. We pretermit discussion of this question because it is our judgment that appellant was guilty of the offense of rape, or he was guilty of nothing. Rape is defined as the unlawful carnal knowledge of a woman by a man, accomplished forcibly and against her will. Smelcher v. State, Ala.Cr.App., 385 So.2d 653
(1980); Collins v. State, Ala.Cr.App., 364 So.2d 368, cert. den., Ala., 364 So.2d 374 (1978); Section 13-1-131, Code of Alabama 1975. Proof of actual penetration is sufficient to sustain an indictment for rape as long as the other elements of the crime concur. Myhand v. State, 359 Ala. 415, 66 So.2d 544
(1953); Section 13-1-131, supra. Sexual intercourse is synonymous with carnal knowledge. Harris v. State, Ala.Cr.App.,333 So.2d 871 (1976); Thomas v. State, 53 Ala. App. 232,298 So.2d 652, cert. den., 292 Ala. 755, 298 So.2d 657 (1974).
The trial court is not required to charge the jury on a lesser included offense when the evidence offered at trial points either to the guilt of the accused of the offense charged in the indictment or to his innocence. An accused is entitled to have the jury charged on a lesser included offense only where there is a reasonable theory from the evidence to support the lesser offense. Jackson v. State, Ala.Cr.App.,375 So.2d 1271, cert. den., Ala., 375 So.2d 1274 (1979); Fisher v.State, 57 Ala. App. 310, 328 So.2d 311, cert. den., 295 Ala. 410, 328 So.2d 321 (1976); Owens v. State, 29 Ala. App. 53,191 So. 899, cert. den., 238 Ala. 519, 191 So. 903 (1939).
In the instant case, the testimony of the prosecutrix illustrated that the appellant forcibly perpetrated the sex act against her will and without her consent. The testimony of Dr. Bryne indicated that the vaginal injury inflicted upon the prosecutrix was caused by sexual intercourse. No testimony was offered that it was caused by any means other than penetration. The appellant admitted having sexual intercourse with "a girl" but asserted that it was done with her consent. Consequently, the appellant was either guilty of rape or not guilty of any offense. Thus, he was not entitled to any of his written requested charges on sexual abuse in the first degree regardless of whether it is a lesser included offense to rape. The trial court committed *Page 292 
no error in refusing to give those instructions.
 III
We have examined the evidence in this case and find it sufficient to present a prima facie case of rape. Therefore, the trial court properly overruled appellant's motion to exclude the State's evidence. McMorris v. State, Ala.Cr.App.,394 So.2d 392 (1981); Smelcher v. State, supra; Long v. State, Ala.Cr.App., 370 So.2d 354 (1979); George v. State, Ala.Cr.App., 362 So.2d 1327 (1978); Section 13-1-131, Code of Alabama 1975.
We have examined the record and transcript of evidence and find no error prejudicial to the appellant. Therefore, the judgment of conviction by the Pike Circuit Court is affirmed.
AFFIRMED.
All the Judges concur.