Rape; sentence: thirty years' imprisonment.
During the early morning hours of July 27, 1979, the prosecutrix was awakened in her Montgomery apartment by a man on top of her. He covered her mouth with his hand and called her by name saying that she would not be harmed if she did not scream. The attacker tore away the prosecutrix's nightgown and raped her. Afterwards he exited the apartment through a broken window in an adjacent room. The prosecutrix followed her attacker to the window and saw that he was a white man and completely nude. However, she could not identify him. She immediately called *Page 959 
the Montgomery Police Department. Shortly thereafter the appellant was found asleep in the nude in an adjacent apartment and was arrested.
 I
Appellant asserts that the search of his apartment was illegal and the evidence discovered therefrom should have been suppressed.
At a hearing on the appellant's motion to suppress, the search warrant and a supporting affidavit of Montgomery Police Detective J.T. Hankins were admitted into evidence without objection. In the affidavit Detective Hankins stated that he found the apartment next door to the prosecutrix's apartment open and a pair of "vice-type" pliers lying outside in front of a door. Suspecting that that apartment had also been burglarized, Hankins knocked on the door. Receiving no response, he entered the apartment and found the appellant sleeping in the nude. A screwdriver was seen in plain view as Hankins awakened the appellant, who appeared to be in a "semi-intoxicated state." Detective Hankins ran an identification check on the appellant and found that he was wanted in Florida for escape from prison.
In addition to the above, Detective Hankins testified that a key was found in the back door of the apartment wherein the appellant was found. He also found the pliers lying on the porch outside the back door. The back door and pliers were in close proximity to the point of entry of the prosecutrix's apartment. Hankins had viewed the point of entry, a window, prior to entering the appellant's apartment. He stated that the window had markings on it indicating that some instrument had been used to open it. The screwdriver seen by Hankins was on top of a dresser in the appellant's bedroom and appeared to be "bent somewhat." Detective Hankins testified that he knocked several times before entering the apartment. Upon entering he had to awaken the appellant from a sound sleep. He learned the appellant's identity when, after asking for identification, the appellant handed him his wallet which contained both his driver's license and birth certificate. Detective Hankins testified that upon his entry to the apartment he did not search it, but rather merely walked through it.
Montgomery District Judge Mark Kennedy testified that he issued the instant search warrant. Judge Kennedy testified that there were certain facts not contained in Detective Hankins's affidavit that he testified to prior to the issuance of the search warrant. He stated that he was told that the attacker had called the prosecutrix by her name during the course of the attack.
The appellant testified that around 8:00 a.m. on July 27, 1979, he was awakened by about six police officers who identified themselves and asked if he had heard anything during the night, to which he negatively replied. The appellant stated that he had been drinking heavily the night before and was "hungover." He denied handing them his wallet and did not consent to the search of the apartment.
For a search warrant to be sufficient and satisfy the constitutional requirement of probable cause, the affidavit upon which it is based must state specific facts or circumstances which support a finding of probable cause. Otherwise, the affidavit is faulty and the warrant may not issue. Alford v. State, 381 So.2d 203 (Ala.Cr.App. 1979), cert. denied, 381 So.2d 206 (Ala. 1980).
Probable cause deals with probabilities, not legal technicalities. It is grounded upon those practical, factual considerations of everyday life upon which reasonable and prudent men act. Brinegar v. United States, 338 U.S. 160,69 S.Ct. 1302, 93 L.Ed.2d 1879 (1948). Thus, probability and not proof necessary to convict for criminal activities is the standard for determining probable cause. Yielding v. State,371 So.2d 951 (Ala.Cr.App.), cert. denied, 371 So.2d 962 (Ala. 1979).
The failure of the magistrate, or as in the instant case the district judge, to reduce to writing oral evidence given by the *Page 960 
affiant prior to the issuance of a search warrant will not vitiate an otherwise valid search warrant. Oliver v. State,46 Ala. App. 118, 238 So.2d 916 (1970). See also Mitchum v. State,384 So.2d 1193 (Ala.Cr.App.), cert. denied, 384 So.2d 1205
(Ala. 1980).
Property which is not particularly described in a search warrant may nevertheless be seized if (1) it is reasonably related to the offense in question, (2) the searching officer at the time of the search has a reasonable basis for connecting the property to the crime, and (3) the property is discovered in the course of a good faith search conducted within the authorized perimeter of the search warrant. Satterwhite v.State, 364 So.2d 345 (Ala.Cr.App. 1977).
Detective Hankins was not illegally in the appellant's apartment when he saw the bent screwdriver and made his other observations critical in forming probable cause to obtain the search warrant. He was not a trespasser and did not initially enter the apartment intending to arrest the appellant or conduct a search. He entered on probable cause that the appellant's apartment had been burglarized. Hankins had ample reason to so believe and to investigate based on the following circumstances:
(1) The apartment was immediately next door to the apartment where a known burglary and rape had just occurred;
(2) He observed vice-type pliers lying in front of the door to the apartment;
(3) He found a key in the door;
(4) He found the door unlocked;
(5) On knocking several times, no one replied; and
(6) On announcing his presence, no one replied.
Any police officer faced with these circumstances would have investigated to be certain there was no injured, disabled, or dying victim in the apartment or to determine if a vacant apartment had been burglarized. We cannot say therefore that Detective Hankins was illegally in the apartment when he saw the screwdriver and observed the nude appellant asleep.
After a careful examination of Detective Hankins's affidavit and the testimony offered at the suppression hearing, we are convinced that sufficient probable cause existed for the issuance of the search warrant of the appellant's apartment. Consequently, the trial court properly denied the appellant's motion to suppress the evidence seized.
 II
Appellant contends that the State failed to prove a prima facie case of rape. The State's case is based primarily on circumstantial evidence.
In addition to the previously recited testimony, the prosecutrix stated that on July 27, 1979, both her front and back doors were locked. She thought that her windows were locked as they had been sealed prior to her husband's death. The prosecutrix stated that a person could not run to the left as he exited from the broken window because of the underbrush and a fence. She stated that her attacker ran to the right after exiting her apartment. The prosecutrix testified that she attempted to resist her attacker but failed and that he penetrated her private parts with his private parts. She was transported to a local hospital for treatment where a pelvic examination was performed and vaginal smears and washes were taken. The examination was witnessed by Montgomery Police Investigator Beverly Rambo who delivered the specimens to the evidence technician handling the case.
Detective J.T. Hankins testified that he arrived on the scene around 6:30 a.m. and viewed the point of entry. He stated that if a person exited the window and ran to the right, it would lead directly to the back door of the apartment wherein the appellant was found. Hankins repeated his earlier testimony given at the appellant's suppression hearing concerning his entry into the appellant's apartment. He added that initially the appellant gave his name as "Tony Conner." The back door key was *Page 961 
admitted into evidence as well as the screwdriver found on the dresser in the appellant's bedroom. Investigator Hankins stated that the key also unlocked the back door of the prosecutrix's apartment. He witnessed the taking of blood and saliva samples from the appellant at the jail and blood, saliva, and hair samples from the prosecutrix. He transported them to the state toxicologist.
Montgomery Police Detective W.T. Sheriff testified that he was called to assist in the investigation of the July 27 rape. He inspected the point of entry and removed several mechanical parts which operated the window. He delivered them to the evidence technician. He stated that the damage to the window parts was made from the inside of the apartment.
Tool and firearms examiner Lonnie Hardin testified that he examined the marks on the damaged window parts and the screwdriver recovered from the appellant's dresser. He opined that the marks on the window parts were made by the screwdriver.
Alabama Corrections Investigator Thomas Totty testified that on July 27, 1979, he was senior evidence technician of the Montgomery Police Department and was in charge of the evidence discovered in the instant case. He lifted several latent fingerprints from the broken window and compared them with those of the appellant. Investigator Totty found that several latent fingerprints were made by the appellant. He stated that the latent fingerprints found on the inside of the window were in such a position that, in his opinion, entry into the apartment was made from the outside.
Forensic Serologist William Landrum analyzed the several biological specimens of the prosecutrix and the appellant. He found that the blood types of each were the same, but that the appellant was a secretor while the prosecutrix was not. Examination of the vaginal smears and washes of the prosecutrix indicated that a person matching the same secretion characteristics as the appellant had had intercourse with her.
In Cumbo v. State, 368 So.2d 871, 874 (Ala.Cr.App. 1978), cert. denied, 368 So.2d 877 (1979), we stated:
 "In reviewing a conviction based on circumstantial evidence, this court must view that evidence in the light most favorable to the prosecution. The test to be applied is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether such evidence excludes every reasonable hypothesis but guilt, but whether a jury might reasonably so conclude. . . ." (Citations omitted.)
After a careful review of the State's evidence, we find that it sufficiently established a prima facie case of rape. Further, it is sufficient for the jury to have reasonably inferred the appellant's guilt. Thus, the trial court properly overruled appellant's motions to exclude and for a new trial on this ground as well as denying his request for the affirmative charge. Smelcher v. State, 385 So.2d 653 (Ala.Cr.App. 1980);Collins v. State, 364 So.2d 368 (Ala.Cr.App.), cert. denied,364 So.2d 374 (Ala. 1978); § 13-1-131, Code of Ala. 1975.
 III
Appellant's last contention concerns the trial court's denial of his motion for a mistrial when the State asked appellant on cross-examination whether he had been convicted of the offense of possession of marijuana. We quote from the record:
 "Q. All right. Now, also back in 1973, were you convicted of possession of marijuana?
 "A. What amount are you talking about? Are you talking about a felony?
 "Q. No, I'm just asking you if you were guilty of possession of marijuana?
"MR. ALLEN: Your Honor, we object.
 "THE COURT: Okay. Wait. Don't answer that. You all, approach the bench.
. . . .
"THE COURT: Objection sustained.
 "MR. ALLEN: Your Honor, we move that it be stricken from the record, even the question. *Page 962 
 "THE COURT: Ladies and gentlemen of the jury, the question Mr. Wakefield just asked is to be stricken from the record. You are to strike it from your minds. You are not to consider it. It's not to play any part when you weigh the evidence when you reach your verdict.
 "MR. ALLEN: Your Honor, it's so serious and so prejudicial I move for a mistrial.
"THE COURT: Motion denied.
"MR. ALLEN: Thank you, Your Honor.
 "Q. Okay. Now, back in, you say you believe your first time — (interrupting)
 "THE COURT: Wait one minute before we go any further. I want something for the record. I am going to ask each and every juror if you think Mr. Wakefield's question would in any way bias your verdict in this case. I want each one of you to stand up and tell me whether it would or not.
 "(AT THIS TIME, ALL TWELVE JURORS STOOD AND ANSWERED THE COURT'S QUESTION IN A NEGATIVE RESPONSE THAT IT WOULD NOT INFLUENCE THEIR VERDICT IN ANY WAY. WHEREUPON, THE TRIAL CONTINUED AS FOLLOWS, TO WIT:)"
Initially we note that no answer was given to the above question, thus the question was harmless. Kennedy v. State,373 So.2d 1274 (Ala.Cr.App. 1979); Van Antwerp v. State,358 So.2d 782 (Ala.Cr.App.), cert. denied, 358 So.2d 791 (Ala. 1978);Calhoun v. State, 343 So.2d 1 (Ala.Cr.App. 1977).
Furthermore, the trial court sustained the appellant's objection, promptly instructed the jury that the question be stricken from its consideration, and polled the jury as to any prejudicial effect and found none. The trial judge was commendable in his swift action, and we find that his action eradicated any prejudice to the appellant. Thus, no error or abuse of discretion was committed in denying the appellant's motion for a mistrial. Perry v. State, 371 So.2d 969
(Ala.Cr.App.), cert. denied, 371 So.2d 971 (Ala. 1979); Donahoov. State, 371 So.2d 68 (Ala.Cr.App.), cert. denied,371 So.2d 74 (Ala. 1979); Long v. State, 370 So.2d 354 (Ala.Cr.App. 1979).
AFFIRMED.
All the Judges concur.