On Application for Rehearing

KELLUM, Judge.
The opinion issued on September 30, 2011, is withdrawn, and the following opinion is substituted therefor.
C.B.D., a minor, was adjudicated delinquent on 11 counts of possession of obscene matter, violations of § 13A-12-192(b), Ala.Code 1975. He was placed on probation.[1]
The evidence presented at the delinquency hearing indicated the following. Bill Rafferty, a sergeant with the criminal-investigation unit of the Houston County Sheriffs Department, testified that on February 25, 2009, an investigation was launched regarding then 15-year-old C.B.D. On February 27, 2009, Sgt. Rafferty obtained a search warrant for the residence where C.B.D. lived with his mother, K.R., and his grandparents, and executed the search warrant later that same day. When he arrived at C.B.D.’s residence, Sgt. Rafferty presented either C.B.D.’s mother or grandmother with the warrant — the other was away from the residence, having taken C.B.D. to get his driver’s permit or driver’s license. As a result of the search, a total of 476 pieces of “computer media” were confiscated, including compact discs, digital versatile discs, three types of iPods, two computers, three memory drives, and an X-Box brand video-gaming device. (R. 92.) In addition, *233 three cellular telephones were also confiscated.
Sometime during the search of the residence, C.B.D. returned to the residence and, in the presence of both his mother and grandmother, Sgt. Rafferty advised C.B.D. of his juvenile Miranda[2] rights, and, with the consent of his mother, C.B.D. waived his rights and agreed to speak with Sgt. Rafferty. While speaking with Sgt. Rafferty, C.B.D. admitted that he had looked at pornography on the Internet and that he had downloaded pornography from the Internet to a computer and had then emailed it to his cellular telephone. C.B.D. said that he had looked at pornography “quite often.” (R. 91.) C.B.D. also admitted that he “may have” looked at, and downloaded, child pornography. (R. 89.) C.B.D. said that he used one specific computer in the house — a Dell brand computer — to view pornography. An HP brand computer was also found in the house, but it was being used as the “media center” for the television and cable. (R. 103.) C.B.D. denied sending text messages through his cellular telephone to his stepbrother, B.E., asking B.E. to send him nude photographs of his stepsister and half sister. C.B.D. was not arrested at the time of the search but was left at the house with his family.
Reggie Yeomans, a computer-forensics investigator with the Houston County Sheriffs Department who was present at the time of the search, testified that he conducted a forensic examination of the confiscated items, including the Dell brand computer C.B.D. admitted using to view pornography. On the computer, Inv. Yeo-mans found numerous images and videos he believed constituted child pornography. Sgt. Rafferty subsequently signed 13 juvenile-delinquency petitions based on 13 different images and/or videos that were found on the computer. After hearing the evidence and viewing the images and/or videos, the juvenile court found C.B.D. delinquent on 11 of the 13 counts of possession of obscene matter as charged in the delinquency petitions. This appeal followed.
I.
C.B.D. contends that, for several reasons, the juvenile court erred in denying his motion to suppress the evidence seized from his residence as a result of the search warrant. (Issues I-V in C.B.D.’s brief.)
The records in this appeal and in the previous appeal in this case indicate that, on March 2, 2009, C.B.D. initially filed a motion to suppress all evidence and statements resulting from the execution of the search warrant. In that motion, C.B.D. made only general arguments that his statements and the evidence were obtained in violation of various constitutional provisions. The records do not indicate any ruling on this motion by the juvenile court. On May 4, 2009, C.B.D. filed a second motion to suppress the evidence and statements resulting from the search of his residence, specifically arguing that the State had failed to effectuate the return of the warrant after it had been executed, see Rules 3.10, 3.11, and 3.14, Ala. R.Crim. P., and §§ 15-5-12 and 15-5-13, Ala.Code 1975, and that, as of the date of the second motion, no return had been made, and the search warrant, affidavit, and inventory had not been produced by the State.
At a hearing on the motion, the State asserted that the affidavit and search warrant had been lost before a return could be made, but that it was planning to present *234 testimony at the delinquency hearing regarding the contents of the warrant and affidavit. A lengthy discussion ensued, during which C.B.D. argued that the State had failed to follow the proper procedures in obtaining, executing, and returning the warrant and that any testimony regarding the contents of the warrant and affidavit would be irrelevant because of the failure to follow the requisite procedures. C.B.D. also argued that he was prejudiced by the failure of the State to return the warrant and affidavit because, he said, without knowing what was in the warrant and affidavit, it was impossible for him to lodge any challenge to the contents of the warrant and affidavit. Finally, C.B.D. stated that even if the State could establish that it had followed the proper procedures, it would also be required to establish probable cause for issuance of the warrant.
The juvenile court initially granted the motion to suppress, finding that the State’s failure to effectuate a return of the warrant and the subsequent loss of the warrant and affidavit required suppression of the evidence. The State appealed the juvenile court’s order granting the motion to suppress, and this Court reversed, holding:
“In this case, the juvenile court held the State strictly accountable for its failure to effectuate a return of the search warrant, suppressed the evidence, and dismissed the case. We conclude that this was error. The juvenile court should have afforded the State the opportunity to offer evidence sufficient to demonstrate that the search warrant existed and that it was not lost through fault of the State and to establish the contents of the lost warrant through secondary evidence.”
State v. C.B.D., 71 So.3d 717, 720-21 (Ala.Crim.App.2009).
On remand, the juvenile court conducted another suppression hearing, at which the State presented the following testimony to establish the existence and contents of the search warrant and accompanying affidavit. Brad Mendheim, a circuit judge in Houston County, testified that he remembered Sgt. Rafferty requesting a search warrant in a child-pornography case involving a juvenile in February 2009. He said that, based on “conversations” with the prosecutor, the search warrant was “apparently” issued in C.B.D.’s case. (R. 16.) However, Judge Mendheim testified that he could not remember any specifics about the warrant in this case. He said that his general policy in issuing a search warrant was to place the officer requesting the warrant under oath and ask if everything in the affidavit submitted in support of the warrant was true and, if necessary, to obtain additional information not contained in the affidavit. He said that, in some cases, he would also add information to the warrant by handwriting it on the warrant. Judge Mendheim said that, “for a computer pornography case,” he would have generally required that the officer requesting the warrant state in the affidavit why he or she believed a particular computer contained child pornography and that he “wouldn’t have issued the search warrant without that information.” (R. 18-19.) Judge Mendheim also testified that he had signed numerous search warrants for Sgt. Rafferty and that Sgt. Raf-ferty “knows ... what he needs” in terms of probable cause before requesting a search warrant. (R. 19.)
Sgt. Rafferty testified that in February 2009, he was contacted by the Children’s Advocacy Center (“CAC”) regarding an interview, and he went to the CAC and spoke with a representative of the Houston County Department of Human Resources (“DHR”), as well as with C.B.D.’s father, B.D. Based on the information he re *235 ceived from the CAC[3] and from B.D., he prepared an affidavit and search warrant for the residence where C.B.D. was living, listing the specific address and lot number of C.B.D.’s residence and stating that he expected to find child pornography at the residence. Sgt. Rafferty specifically put in the affidavit the “[fjacts that we obtained in the investigation” (R. 37), including not only the information he had obtained from the CAC, but also information he had received from B.D. regarding B.D.’s interception of a text message on his stepson’s, B.E.’s, cellular telephone from C.B.D. asking B.E. to take nude photographs of himself and his sisters. Although Sgt. Rafferty could not “remember word for word how the affidavit was typed up[,]” he testified that he remembered this case specifically because much of the information he received had come from C.B.D.’s father who had concerns about child-pornography issues with C.B.D. and, thus, he remembered “the basis of our grounds for the affidavit.” (R. 34.)
Sgt. Rafferty said that in child-pornography cases, he generally lists in the affidavit and the search warrant the specific items to be searched for, including all electronic means of storing information, such as cellular telephones, computers, hard drives, cameras, scanners, printers, portable music/video players, and gaming consoles. When asked if there was a reason he requested a warrant in this case for more than just C.B.D.’s cellular telephone, Sgt. Rafferty said that “all this [referring to the above list of items] is put into the affidavit ... [b]ecause any part or any one of these items where images can be stored would be a part of the case.” (R. 36.) According to Sgt. Rafferty, he prepared the affidavit and search warrant and took it to Judge Mendheim, who signed the warrant on February 27, 2009. Sgt. Raf-ferty said that he explained the facts of the investigation to Judge Mendheim and swore under oath that the information in the affidavit was true and that Judge Men-dheim asked him additional questions and then signed the warrant. Sgt. Rafferty could not remember what specific questions Judge Mendheim asked. The warrant was executed the same day. Sgt. Rafferty said that he did not have a copy of the affidavit or search warrant and that he had been unable to find them. He said, however, that he did not deliberately destroy or lose the affidavit and warrant.
Inv. Yeomans testified that he participated in the search of the residence where C.B.D. lived and that he saw a copy of the search warrant and that it authorized a search of C.B.D.’s residence for “[a]ny media that could store images or videos.” (R. 60.) During the search, Inv. Yeomans wrote on the back of the copy of the search warrant a list of all the evidence that was confiscated from the residence, and left that copy of the search warrant at C.B.D.’s home. He said that following the search, he never had possession of the original search warrant or affidavit, that he did not effectuate a return of the warrant, and that he did not deliberately destroy, hide, or lose the warrant and affidavit.
Donna Shellhouse, employed with the Houston County DHR, testified that DHR was investigating C.B.D. regarding “allegations involving other children” and that the investigation included electronic media. (R. 44.) According to Shellhouse, the investigation caused her to be concerned that C.B.D. was electronically transmitting *236 pornographic material and she contacted Sgt. Rafferty. Shellhouse also testified that, although she was not present during the search of C.B.D.’s residence, she went to C.B.D.’s residence on March 4, 2009, and C.B.D.’s mother, K.R., showed her a piece of paper with typewriting on it that K.R. said the sheriffs department had given her at the time of the search, i.e., the search warrant. Shellhouse, however, said that she did not read the document.
B.D., C.B.D.’s father, testified that in February 2009, he looked at his stepson’s, B.E.’s, text messages on his cellular telephone and became concerned when he saw messages from C.B.D. asking for nude pictures of B.D.’s 11-year-old stepdaughter and 5-year-old daughter. B.D. said that he initially telephoned C.B.D.’s mother about the text messages and asked her to confiscate and hold C.B.D.’s cellular telephone until he arrived but that when he arrived, C.B.D.’s mother told him that she had gone through C.B.D.’s cellular telephone and found nothing on it. B.D. said that he was not able to look at C.B.D.’s telephone. Around February 26, 2009, B.D. spoke with Sgt. Rafferty and expressed concern that C.B.D. may have accessed pornographic material and there may have been “some ... child porn issues.” (R. 52.)
Following the testimony, C.B.D. argued that the evidence obtained pursuant to the search warrant should be suppressed because, he said, “there’s not been any real evidence or any real testimony as to what was contained in the affidavit,” but only “general testimony as to what’s done in most cases.” (R. 65.) C.B.D. also asked the juvenile court to consider the appellate brief he had previously filed with this Court when the State had appealed the juvenile court’s initial order granting the motion to suppress, and that brief was admitted into evidence. In his previously filed brief, C.B.D. reiterated the argument made in his second motion to suppress that the failure to effectuate a return of the search warrant and accompanying affidavit automatically mandated suppression of the evidence seized, an argument this Court expressly rejected in State v. C.B.D., supra. He also argued that he was prejudiced by the failure of the State to effectuate a return of the warrant because, he said, “[without the affidavit, there is no way to determine if the judge that allegedly issued the search warrant had probable cause to do so and that the lawful procedures for the issuance of the warrant were followed.” (C.B.D.’s brief in case no. CR-08-1245, at 11.) C.B.D. further argued that all the cases cited by the State in its previously filed brief were distinguishable from his case and did not authorize the State to present parol evidence to establish the contents of a search warrant and accompanying affidavit that had been lost, an argument that was also rejected by this Court in State v. C.B.D., supra.[4]
The juvenile court denied the motion to suppress, finding that the State had proven the existence of the search warrant and accompanying affidavit, and that “although the witnesses were not able to recall word for word what was in the affidavit and search warrant, the State substantially established the contents of the lost affidavit and search warrant.” (R. 70.)
*237 “In reviewing a trial court’s ruling on a motion to suppress, this Court reviews the trial court’s findings of fact under an abuse-of-discretion standard of review. ‘When evidence is presented ore terms to the trial court, the court’s findings of fact based on that evidence are presumed to be correct,’ Ex parte Perkins, 646 So.2d 46, 47 (Ala.1994); ‘[w]e indulge a presumption that the trial court properly ruled on the weight and probative force of the evidence,’ Bradley v. State, 494 So.2d 750, 761 (Ala.Crim.App.1985), aff'd, 494 So.2d 772 (Ala.1986); and we make ' “all the reasonable inferences and credibility choices supportive of the decision of the trial court.” ’ Kennedy v. State, 640 So.2d 22, 26 (Ala.Crim.App.1993), quoting Bradley, 494 So.2d at 761. ‘[A]ny conflicts in the testimony or credibility of witnesses during a suppression hearing is a matter for resolution by the trial court.... Absent a gross abuse of discretion, a trial court’s resolution of [such] conflicts] should not be reversed on appeal.’ Sheely v. State, 629 So.2d 23, 29 (Ala.Crim.App.1993) (citations omitted). However, ‘ “[w]here the evidence before the trial court was undisputed the ore tenus rule is inapplicable, and the [appellate] Court will sit in judgment on the evidence de novo, indulging no presumption in favor of the trial court’s application of the law to those facts.” ’ State v. Hill, 690 So.2d 1201, 1203 (Ala.1996), quoting Stiles v. Brown, 380 So.2d 792, 794 (Ala.1980). ““[W]hen the trial court improperly applies the law to the facts, no presumption of correctness exists as to the court’s judgment.’ ” ’ Ex parte Jackson, 886 So.2d 155, 159 (Ala.2004), quoting Hill, 690 So.2d at 1203, quoting in turn Ex parte Agee, 669 So.2d 102, 104 (Ala.1995). A trial court’s ultimate legal conclusion on a motion to suppress based on a given set of facts is a question of law that is reviewed de novo on appeal. See State v. Smith, 785 So.2d 1169 (Ala.Crim.App.2000).”
State v. Hargett, 935 So.2d 1200, 1203-04 (Ala.Crim.App.2005). With these principles in mind, we address each of C.B.D.’s claims in turn.
A.
C.B.D. contends that the State failed to lay a proper predicate for the admission of parol evidence to prove the contents of the affidavit and warrant. (Issue III in C.B.D.’s brief.) Specifically, he argues that the State failed to present sufficient evidence that it conducted a diligent search for the lost warrant and affidavit which, he says, is a prerequisite to the admission of parol evidence.
Our examination of the record indicates that this argument was never presented to the juvenile court. C.B.D. did not object at the suppression hearing to the parol evidence regarding the contents of the affidavit and search warrant on the ground that the State had failed to establish that it had engaged in diligent search for the lost documents.[5] Likewise, C.B.D. never argued to the juvenile court that it should not consider the State’s par-ol evidence in ruling on the motion to suppress on the ground that the proper predicate had not been laid for its admission. “Review on appeal is limited to review of questions properly and timely raised at trial.” Newsome v. State, 570 So.2d 703, 716 (Ala.Crim.App.1989). “In order for this court to review an alleged erroneous admission of evidence, a timely objection must be made to the introduction of the evidence, specific grounds for the objection should be stated and a ruling on *238 the objection must be made by the trial court.” Goodson v. State, 540 So.2d 789, 791 (Ala.Crim.App.1988), abrogation on other grounds recognized by Craig v. State, 719 So.2d 274 (Ala.Crim.App.1998). “When a timely objection at the time of the admission of the evidence is not made, the issue is not preserved for this Court’s review.” Ziglar v. State, 629 So.2d 43, 47 (Ala.Crim.App.1993). Therefore, this issue was not properly preserved for appellate review.
Moreover, even had this issue been properly preserved, it is meritless.
“Whether or not sufficient preliminary proof concerning the loss of a document is shown is largely a matter of judicial discretion and need only be proven to the trial court’s reasonable satisfaction. Powell v. [ Hopkins ], 288 Ala. 466, 262 So.2d 289 (1972); C. Gamble, McElroy’s Alabama Evidence, § 214.01 (3d ed.1977). Because direct proof of loss is normally not available, it is usually shown by the fact that a diligent but futile search was conducted. J.R. Watkins Co. v. Goggans, 242 Ala. 222, 5 So.2d 472 (1942).”
Spellman v. State, 500 So.2d 110, 113 (Ala.Crim.App.1986). In Lipscomb v. Tucker, 294 Ala. 246, 314 So.2d 840 (1975), the Alabama Supreme Court explained:
“ ‘ “ ‘If the instrument is lost, the party is required to give some evidence that such a paper once existed, though slight evidence is sufficient for this purpose, and that a bona fide and diligent search has been unsuccessfully made for it in the place where it was most likely to be found, if the nature of the case admits such proof. What degree of diligence in the search is necessary it is not easy to define, as each case depends much on its peculiar circumstances; and the question whether the loss of the instrument is sufficiently proved to admit secondary evidence of its contents is to be determined by the court and not by the jury. But it seems that, in general the party is expected to show that he has in good faith exhausted, in a reasonable degree, all the sources of information and means of, discovery which the nature of the case would naturally suggest and which were accessible to him.”””
294 Ala. at 257, 314 So.2d at 850 (some emphasis added; some emphasis and citations omitted). See also Charles W. Gamble, McElroy’s Alabama Evidence § 214.01 (6th ed.2009).
In Lipscomb, the Court upheld the admission of parol evidence to establish the contents of a contract, finding that a sufficient predicate had been laid when the plaintiff testified that he had signed the contract and that he had not received either the original or a copy of the contract but that it was kept in the office of the attorneys who represented the defendants, and, in response to motions to produce, the defendants and their attorneys denied having the original contract or a copy of the contract. Similarly, in Spellman, supra, this Court upheld the admission of parol evidence to establish the contents of two letters, finding that a sufficient predicate had been laid when testimony was presented from a witness that she had been told by the defendant’s mother that the letters belonged to the defendant, that the witness had read the letters, and that the letters disappeared after the defendant’s mother had come to her house. Finally, in Thomas v. State, 37 Ala.App. 118, 66 So.2d 103 (1953), the Court upheld the admission of parol evidence to establish the contents of a search warrant, finding that a sufficient predicate had been laid when the law-enforcement officer who obtained and executed the warrant testified about the warrant and its execution and said that he returned the warrant to the circuit clerk’s *239 office, the circuit clerk testified that he had no recollection of the warrant being returned but customarily placed search warrants that had been returned into the court file accessible to local attorneys, and the warrant was not in the court file at the time of the defendant’s trial.
In this case, there was specific testimony by Sgt. Rafferty that he had searched for the warrant and affidavit but had been unable to locate them. In addition, both Sgt. Rafferty and Inv. Yeomans testified to the existence of the warrant and specifically said that they had not purposefully lost or destroyed the warrant and accompanying affidavit. This testimony was much stronger than the testimony presented in Lipscomb, Spellman, or Taylor, supra, and was sufficient to establish the proper predicate for the admission of parol evidence regarding the contents of the warrant and accompanying affidavit.
B.
C.B.D. also contends that the State failed to present sufficient evidence establishing the contents of the search warrant and accompanying affidavit. (Issue IV in C.B.D.’s brief.) He argues that Judge Mendheim had no recollection of the warrant and accompanying affidavit and that “[t]he only witness who testified about the contents of the warrant was [Inv.] Yeomans.” (C.B.D.’s brief, at 38.)
Initially, we note that, as the State points out in its brief on appeal, C.B.D.’s argument in this regard includes no citation to legal authority. Rule 28(a)(10), Ala. R.App. P., requires that an argument contain “the contentions of the appellant/petitioner with respect to the issues presented, and the reasons therefor, with citations to the cases, statutes, other authorities, and parts of the record relied on.” “[W]e are not required to consider matters on appeal unless they are presented and argued in brief with citations to relevant legal authority.” Zasadil v. City of Montgomery, 594 So.2d 231, 231 (Ala.Crim.App.1991). “When an appellant fails to cite any authority for an argument on a particular issue, this Court may affirm the judgment as to that issue, for it is neither this Court’s duty nor its function to perform an appellant’s legal research.” City of Birmingham v. Business Realty Inv. Co., 722 So.2d 747, 752 (Ala.1998). Failure to comply with Rule 28(a)(10) has been deemed a waiver of the issue presented. See, e.g., Hamm v. State, 913 So.2d 460, 486 (Ala.Crim.App.2002). Therefore, because C.B.D.’s argument in this regard does not comply with Rule 28(a)(10), it is deemed to be waived.
Moreover, even if this issue was not waived, it is meritless. First, the fact that Judge Mendheim did not remember the specifics of the search warrant he signed or the affidavit submitted in support of that warrant does not lend itself to the conclusion that the contents of the affidavit and warrant were not proven. C.B.D. has cited no authority, and we have found none, for the proposition that parol evidence to establish the contents of a search warrant and accompanying affidavit must be in the form of testimony from the judge who issued the warrant. To the contrary, parol evidence to establish the contents of a lost affidavit may be in the form of testimony from the officer who drafted the affidavit. See, e.g., Baptiste v. State, 288 Ga. 653, 706 S.E.2d 442 (2011) (testimony of officer that unsigned copy of affidavit was identical to affidavit submitted in support of search warrant but later lost was sufficient to establish contents of affidavit).
Second, C.B.D.’s assertion that Inv. Yeomans was the only person to testify regarding the contents of the search *240 warrant is belied by the record. Sgt. Raf-ferty also testified about the contents of the search warrant, and his testimony, as set out above in detail, was sufficient to establish the contents of the warrant and accompanying affidavit. Briefly summarized and viewed in the light most favorable to the juvenile court’s ruling, Sgt. Rafferty’s testimony established that the affidavit submitted in support of the search warrant included the following facts: that C.B.D. had requested that his minor stepbrother take nude photographs of himself and his minor sisters and send them to C.B.D., that DHR was investigating C.B.D. based on allegations made by other children, and that the investigation of those allegations led to the belief that C.B.D. was transmitting pornography through electronic media. Although neither the specific nature of the allegations against C.B.D. made by other children nor the specific details of the information Sgt. Rafferty received from the CAC were disclosed at the suppression hearing, Sgt. Rafferty’s testimony established that all of that information was also included in the affidavit.[6] In addition, Sgt. Rafferty’s testimony established that the specific address and lot number of the residence where C.B.D. was living were included in the affidavit and warrant, i.e., the place to be searched was specifically described, and that both the affidavit and warrant specifically listed the electronic media capable of storing the type of information being sought — cellular telephones, computers, hard drives, cameras, scanners, printers, portable music/video players, and gaming consoles — i.e., the items to be searched for were specifically described.
Although Sgt. Rafferty could not remember verbatim the contents of the affidavit and warrant, such word-for-word recitation of the contents of a lost document is generally not required. See, e.g., Laster v. Blackwell, 128 Ala. 143, 30 So. 663, 664 (1901) (“Though a witness may be unable to recall the [exact] language of a lost paper, he may be allowed to state its substance, if remembered.”); Barranco v. Kostens, 189 Md. 94, 97-98, 54 A.2d 326, 328 (1947) (“It is not necessary that the testimony of a witness who has read a lost instrument should be able to give its exact language, but it is sufficient if it proves its substance as far as it relates to the matter in controversy.”); Walker v. Drogmund, 101 Colo. 521, 525, 74 P.2d 1235, 1236 (1937) (“Ordinarily, it is not necessary that witnesses should be able to tell the con *241 tents of the [lost] instrument with absolute verbal accuracy, it being sufficient if they are able to state it in substance.”); and Posten v. Rassette, 5 Cal. 467, 469 (1855) (“In the case of lost instruments, where no copy has been preserved, it is not to be expected that witnesses can recite its contents, word for word; — it is sufficient if intelligent witnesses, who have read the paper, understood its object and can state it with precision.”).
Rather, evidence substantially establishing the contents of the document is all that is necessary. See, e.g., Commonwealth v. Ocasio, 484 Mass. 1, 5, 746 N.E.2d 469, 473 (2001) (“If all the terms of the warrant can be reliably established through secondary means ... then the defendant will not be deprived of any opportunity to mount a challenge against the warrant.”); and Boyd v. State, 164 Miss. 610, 145 So. 618, 619 (1933) (when an affidavit and search warrant are lost, the State must only prove “substantially their contents”).
Therefore, making all reasonable inferences and resolving all credibility choices in favor of the juvenile court’s ruling, as we must, we agree with the juvenile court that the State substantially established the contents of the search warrant and accompanying affidavit.
C.
C.B.D. also contends that the State’s failure to effectuate a return of the warrant prejudiced him because, he says, he was unable to challenge the warrant and accompanying affidavit. (Issue II in C.B.D.’s brief.) Specifically, C.B.D. argues that because the warrant and affidavit were not returned and were lost and because, he says, “[t]here was no evidence as to the contents of the any affidavit,” he could not challenge the contents of the warrant and affidavit. (C.B.D.’s brief, at 35.) This argument is meritless because, as noted in Part I.B. of this opinion, the State sufficiently proved the contents of the warrant and affidavit. Therefore, C.B.D.’s ability to challenge the contents of the warrant and affidavit and the manner in which the warrant was issued and executed was not compromised.
D.
C.B.D. further contends that there was no probable cause to issue the search warrant. (Issue I in C.B.D.’s brief.) He argues that the only information known to law enforcement at the time the search warrant was obtained was that C.B.D. had sent text messages to his brother asking for nude photographs of his half sister and stepsister, but that no such photographs were ever found. A request for items that would constitute child pornography, C.B.D. concludes, does not establish probable cause to believe that someone is actually in possession of child pornography.
Section 15-5-3, Ala.Code 1975, provides that “[a] search warrant can only be issued on probable cause, supported by an affidavit naming or describing the person and particularly describing the property and the place to be searched.”
“ ‘ “For a search warrant to be sufficient and satisfy the constitutional requirement of probable cause, the affidavit upon which it is based must state specific facts and circumstances which support a finding of probable cause.” Carter v. State, 405 So.2d 957, 959 (Ala.Cr.App.), cert. denied, 405 So.2d 962 (Ala.1981).’ Callahan v. State, 557 So.2d 1292, 1304 (Ala.Cr.App.), affirmed, 557 So.2d 1311 (Ala.1989), cert. denied, [498] U.S. [881], 111 S.Ct. 216, 112 L.Ed.2d 176 (1990). ‘Probable cause to search a residence exists when “there is a fair probability that contraband or evidence *242 of a crime will be found in a particular place.” Illinois v. Gates, 462 U.S. [213] at 238, 103 S.Ct. [2317] at 2332[, 76 L.Ed.2d 527 (1983) ].’ United States v. Jenkins, 901 F,2d 1075, 1080 (11th Cir.), cert. denied, [498] U.S. [901], 111 S.Ct. 259, 112 L.Ed.2d 216 (1990).... [T]here is no requirement of a ‘showing that such a belief be correct or more likely true than false. A “practical, nontechnical” probability that incriminating evidence is involved is all that is required.’ Texas v. Brown, 460 U.S. [730,] 742, 103 S.Ct. [1535,] 1543 [75 L.Ed.2d 502 (1983)]. Additionally, ‘[wjhere a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical rather than a commonsense manner, and should resolve doubtful or marginal cases according to the preference to be accorded to warrants.’ Maddox v. State, 502 So.2d 779, 785 (Ala.Cr.App.1985), affirmed in part, remanded on other grounds, 502 So.2d 786 (Ala.), cert. denied, 479 U.S. 932, 107 S.Ct. 404, 93 L.Ed.2d 357 (1986).”
Poole v. State, 596 So.2d 632, 641 (Ala.Crim.App.1992). Indeed,
“ ‘[p]robable cause deals with probabilities, not legal technicalities. It is grounded upon those practical, factual considerations of everyday life upon which reasonable and prudent men act. Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1948).’ Carter v. State, 405 So.2d 957, 959 (Ala.Cr.App.), cert. denied, 405 So.2d 962 (Ala.1981). ‘Probable cause does not require an officer to compile an airtight case against a suspect.’ Williams v. State, 440 So.2d 1139, 1145 (Ala.Cr.App.1983). ‘It merely requires that the facts available to the officer would “warrant a man of reasonable caution in the belief’ that certain items may be contraband ....’”
Mewbourn v. State, 570 So.2d 805, 808 (Ala.Crim.App.1990).
“ ‘Probable cause must be determined by an analysis of “the totality of the circumstances.” Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). In determining whether to issue a search warrant, the issuing magistrate is to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of the person supplying the information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.’ ”
Loggins v. State, 771 So.2d 1070, 1080 (Ala.Crim.App.1999), aff'd, 771 So.2d 1093 (Ala.2000) (quoting Marks v. State, 575 So.2d 611, 614-15 (Ala.Crim.App.1990)). “An issuing judge’s determination that sufficient probable cause existed to support the warrant is ‘entitled to great deference and is conclusive in the absence of arbitrariness.’ ” Wamble v. State, 593 So.2d 109, 110 (Ala.Crim.App.1991) (quoting United States v. Pike, 523 F.2d 734 (5th Cir.1975)).
Here, the evidence at the suppression hearing established that the affidavit submitted in support of the search warrant supplied sufficient facts and circumstances to support Judge Mendheim’s finding of probable cause. Sgt. Rafferty testified that he included in the affidavit all the facts from his investigation, which he gathered from the CAC and from C.B.D.’s father. As explained above, when all reasonable inferences and all credibility choices are resolved, as they must be, in favor of the juvenile court’s ruling, the testimony established that the following facts were obtained during Sgt. Rafferty’s investigation and thus, included in the affi *243 davit. Sgt. Rafferty was summoned to the CAC by Shellhouse based on an interview relating to allegations against C.B.D. made by other children. An investigation into those allegations established that C.B.D. was involved in transmitting pornography through electronic media. In addition, C.B.D.’s father had found text messages on a cellular telephone used by his stepson, B.E., from C.B.D. requesting that B.E. take and then transmit to C.B.D. nude photographs of himself, his sister, and his half sister, all of whom were under the age of 17. C.B.D.’s specific request for pornographic photographs of his underage siblings, coupled with the ongoing investigation of C.B.D. by DHR that involved C.BD.’s transmission of pornography through electronic media, was sufficient to warrant a man of reasonable caution to believe that there was a fair probability that child pornography would be found in C.B.D.’s residence in some electronic form. Therefore, there was probable cause for issuance of the search warrant.
E.
Finally, C.B.D. contends that the search warrant was “overly broad” because, he says, the only specific information law enforcement had on which to base the warrant was from C.B.D.’s father regarding C.B.D.’s text messages seeking child pornography. (Issue V in C.B.D.’s brief, at 39.) C.B.D. argues that, although there may have been probable cause to search C.B.D.’s cellular telephone, there was no probable cause to search for child pornography on any other electronic media.
Initially, we note that, as the State points out in its brief to this Court, this issue was never presented to the juvenile court. As noted above, “[rjeview on appeal is limited to review of questions properly and timely raised at trial.” Newsome v. State, 570 So.2d 703, 716 (Ala. Crim.App.1989). Although C.B.D. lodged several challenges to the validity of the warrant and affidavit, none of those challenges alleged that the warrant was overly broad. “A defendant is bound by the grounds of objection stated at trial and may not expand those grounds on appeal.” Griffin v. State, 591 So.2d 547, 550 (Ala.Crim.App.1991). “The statement of specific grounds of objection waives all grounds not specified, and the trial court will not be put in error on grounds not assigned at trial.” Ex parte Frith, 526 So.2d 880, 882 (Ala.1987). Therefore, this issue was not properly preserved for appellate review.
Moreover, even if this issue had been properly preserved, it is merit-less.
“The purpose of the Fourth Amendment particularity requirement is to prevent ‘[g]eneral exploratory searches.’ Palmer v. State, 426 So.2d 950, 952 (Ala.Crim.App.1983). ‘General exploratory searches and seizures, with or without a warrant, can never be justified and are forbidden and condemned.’ Id. (citing Marron v. United States, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231 (1927)). In Ex parte Jenkins, 26 So.3d 464, 474 (Ala.2009), the Alabama Supreme Court explained that ‘the requirements of particularity [of a search warrant] are met if the substance to be seized is described with reasonable particularity which, in turn, is to be evaluated in light of the rules of practicality, necessity, and common sense.’ (internal citations and quotations omitted).”
Green v. State, 61 So.3d 386, 390-91 (Ala.Crim.App.2010). In State v. Jenkins, 26 So.3d 458 (Ala.Crim.App.2007), aff'd, 26 So.3d 464 (Ala.2009), this Court explained:
“ ‘The specific command of the Fourth Amendment to the Constitution of the United States is that no warrants shall issue except those “particularly *244 describing the ... things to be seized.”
“ ‘However, the description of things to be seized contained in the warrant under review is not so broad that the authorization constitutes a general exploratory search. Certainly, “an otherwise unobjectionable description of the objects to be seized is defective if it is broader than can be justified by the probable cause upon which the warrant is based.” Vonder[A ]he v. Howland, 508 F.2d 364 (9th Cir.1974); W. LaFave, 2 Search and Seizure, Section 4.6, n. 11 (1978) (hereinafter Search).
“ ‘However, a less precise description is required of property which is, because of its particular character, contraband.
“ ‘ “ ‘If the purpose of the search is to find a specific item of property, it should be so particularly described in the warrant as to preclude the possibility of the officer seizing the wrong property; whereas, on the other hand, if the purpose is to seize not a specific property, but any property of a specified character, which by reason of its character is illicit or contraband, a specific particular description of the property is unnecessary and it may be described generally as to its nature or character.’ ”
“‘2 Search, p. 101, citing People v. Schmidt, 172 Colo. 285, 473 P.2d 698 (1970).’
“Palmer v. State, 426 So.2d 950, 952 (Ala.Crim.App.1983).”
26 So.3d at 463.
Contrary to C.B.D.’s contention, there was, as explained in Part I.D. of this opinion, probable cause for the issuance of the search warrant for all electronic media that could contain child pornography, based on the facts Sgt. Rafferty obtained from the CAC and DHR. In addition, as explained in Part I.B. of this opinion, the State established at the suppression hearing that the warrant particularly described the items to be seized. Therefore, the search warrant was not overbroad.
II.
C.B.D. also contends that there was insufficient evidence to warrant adjudicating him delinquent because, he says, the State failed to prove that he actually or constructively possessed the child pornography. (Issue VI in C.B.D.’s brief.) Specifically, he argues that he was not in exclusive possession of the images and/or videos because the computer on which the images and/or videos were found was in the living room of the residence and accessible by the three adults also living in the residence — his mother, his grandmother, and his grandfather.
Section 12-15-65(e), Ala.Code 1975, requires that an adjudication of delinquency be supported by “proof beyond a reasonable doubt, based upon competent, material, and relevant evidence.” In determining whether there is sufficient evidence to sustain a conviction or a delinquency adjudication, “ ‘a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution.’ ” Ballenger v. State, 720 So.2d 1033, 1034 (Ala.Crim.App.1998) (quoting Faircloth v. State, 471 So.2d 485, 488 (Ala.Crim.App.1984), aff'd, 471 So.2d 493 (Ala.1985)). “ ‘The test used in determining the sufficiency of evidence to sustain a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational finder of fact could have found the defendant guilty beyond a *245 reasonable doubt.’ ” Nunn v. State, 697 So.2d 497, 498 (Ala.Crim.App.1997) (quoting O’Neal v. State, 602 So.2d 462, 464 (Ala.Crim.App.1992)).
Section 13A-12-192(b), Ala.Code 1975, provides that “[a]ny person who knowingly possesses any obscene matter that contains a visual depiction of a person under the age of 17 years engaged in any act of sado-masochistic abuse, sexual intercourse, sexual excitement, masturbation, genital nudity, or other sexual conduct shall be guilty of a Class C felony.” In Ward v. State, 994 So.2d 293 (Ala.Crim.App.2007), this Court explained the concept of “possession” in terms of child pornography, in pertinent part, as follows:
“ ‘Child pornography has gone high technology, and there is no sign of the trend abating.’ Don’t Cache Out Your Case: Prosecuting Child Pornography Possession Laws Based on Images Located in Temporary Internet Files, 19 Berkeley Tech. L.J. at 1228. Computer images of child pornography fall within the definition of ‘obscene matter,’ as that term is used in § 13A-12-192, Ala. Code 1975. In Rutledge v. State, 745 So.2d 912 (Ala.Crim.App.1999), this Court held that ‘§ 13A-12-192, Ala. Code 1975, prohibits the possession and dissemination of child pornography by any means, including visual depictions of children engaged in sexual acts displayed on computers, computer diskettes, and the Internet.’ ...
[[Image here]]
“In State v. Mobley, 129' WashApp. 378,118 P.3d 413 (2005), the Washington Court of Appeals stated that the issue of possession in the context of computer images concerns whether the defendant ‘reached out for and exercised dominion and control’ over the images. It stated:
“ ‘When synthesized with Washington’s constructive possession law, the core question seems to be whether the totality of the circumstances establishes that a defendant reached out for and exercised dominion and control over the images at issue. See id. [United States v. Perez, 247 F.Supp.2d 459 (S.D.N.Y.2003) ]; see also [United States v.] Tucker, 305 F.3d [1193] 1204 [(10th Cir.2002)]; [State v.] Callahan, 77 Wash.2d [27] at 29, 459 P.2d 400 [ (1969) ]. This approach recognizes and promotes the purposes behind Washington’s child pornography statute, to protect children by discouraging their sexual exploitation for commercial gain and personal satisfaction. See RCW 9.68A.001. Therefore, evidence of “reaching out for” and “controlling” child pornographic images is incriminating, while inadvertent viewing questions are left to the fact finder.’
“129 Wash.App. at 385, 118 P.3d at 416. In United States v. Romm, 455 F.3d 990, 998 (9th Cir.2006), the court stated:
“ ‘Here, we hold Romm exercised dominion and control over the images in his cache by enlarging them on his screen, and saving them there for five minutes before deleting them. While the images were displayed on Romm’s screen and simultaneously stored in his laptop’s hard drive, he had the ability to copy, print, or email the images to others. Thus, this evidence of control was sufficient for the jury to find that Romm possessed and received the images in his cache.’
“Alabama’s child-pornography statute, § 13A-12-192, Ala.Code 1975, does not define ‘possess’ but Alabama has long recognized that possession may be either actual or constructive.
“ ‘ “Constructive possession exists when the defendant exercises, or has the power to exercise, dominion and *246 control over the item.” United States v. Laughman, 618 F.2d 1067, 1077 (4th Cir.1980); United States v. Phillips, 496 F.2d 1395, 1397 (5th Cir.1974), cert. denied, 422 U.S. 1056, 95 S.Ct. 2680, 45 L.Ed.2d 709 (1975). “Constructive possession may be determined by weighing those facts which tend to support the defendant’s necessary control over the substance against those facts which demonstrate a lack of dominion and control.” Roberts [ v. State ], 349 So.2d [89,] 91 [ (Ala.Crim.App.1977) ].’
“German v. State, 429 So.2d 1138, 1140 (Ala.Cr.App.1982). The German Court further stated:
“ ‘ “The possession vital to the convictions under review may, in familiar language, be either actual or constructive. It thus is unnecessary to show that the accused had the drug on his person or within his immediate reach; it is enough that he ‘was knowingly in a position or had the right to exercise dominion and control over’ it, either directly or through others. Possession in that sense suffices though it is jointly shared, and it may be established by circumstantial as well as direct evidence.
“ ‘ “We are aware of criticisms — on grounds of imprecision — of the constructive-possession doctrine, thus formulated, as a measure of the legal sufficiency of evidence to demonstrate drug-possession. We think, however, that this adjudicative standard becomes acceptable when it is realized that the critical inquiry for judges is whether the factfinder can reasonably conclude from the proof that the accused likely had some appreciable ability to guide the destiny of the drug. Even were we free to do otherwise, we would adhere to that concept in preference to artificial rules restricting evidence — sufficiency—rules that would inevitably invade the traditional province of the jury to assess the significance of circumstantial evidence, and to determine whether it eliminates all reasonable doubt as to whether the accused had that power.” ’
“429 So.2d at 1141-42, quoting United States v. Staten, 581 F.2d 878, 882-885 (U.S.App.D.C.1978).
“After considering Alabama’s definition of possession in relation to computer images, we believe that the question becomes: Did the defendant specifically seek out the prohibited images and did he have the ability to exercise dominion and control over those images?
“Here, the record shows that the child pornography was saved as temporary Internet files on Troy University’s computer. Because Ward pleaded guilty, we do not know whether Ward was aware that the Web pages were automatically saved. However, a forensic examination of the computer showed that Ward ‘reached out’ for 288 images of child pornography. Though the factual basis is silent as to whether Ward copied, printed, e-mailed, or sent the images to his home computer, and there is no other indication in the record that he did so, Ward had the ability to do so when he was viewing the downloaded Web pages. Also, we note that Ward’s home computer was seized and found to contain child pornography. Applying the broad definition of constructive possession recognized in Alabama, we find that the evidence was sufficient to show that Ward exercised dominion and control over the child pornography and thus was in possession of child pornography.”
994 So.2d at 296-302.
Here, although the computer on which the images and/or videos were found *247 was accessible by people other than C.B.D., C.B.D. also had access to the computer, and he admitted to Sgt. Rafferty that he often viewed and downloaded pornography on that computer. C.B.D. also admitted that his viewing of pornography “may have” included child pornography. In addition, C.B.D. admitted to Sgt. Rafferty that he often e-mailed pornography to his cellular telephone. A reasonable inference from C.B.D.’s admissions is that he viewed and downloaded not only adult pornography but child pornography as well. Therefore, given Alabama’s broad definition of constructive possession, a rational finder of fact could have reasonably concluded that C.B.D. “reached out” for the child pornography found on the computer and exercised dominion and control over it. This evidence was sufficient to warrant the juvenile court’s finding that C.B.D. was delinquent.
III.
Finally, C.B.D. contends that the juvenile court erred in denying his motion to dismiss all but one of the delinquency petitions on the ground of double jeopardy. (Issue VII in C.B.D.’s brief.) Specifically, he argues that his multiple adjudications of delinquency for possession of obscene matter violated principles of double jeopardy under this Court’s opinion in Girard v. State, 883 So.2d 714 (Ala.Crim.App.2002), aff'd, 883 So.2d 717 (Ala.2003).
In Girard, the defendant was charged with 26 counts of possession of obscene matter under § 13A-12-192(b), Ala.Code 1975, and was convicted of 10 of those counts. The basis of the charges and convictions were numerous images and videos of child pornography found on the defendant’s computer. In holding that the defendant could be convicted only of one count of possession of obscene matter under § 13A-12-192(b), this Court explained, in relevant part:
“This is not a case where the same act or transaction constitutes a violation of two distinct statutory provisions. See Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Rather, this is a case where Girard’s conduct has yielded an indictment in which the possession of each file of obscene material has been charged as a separate crime under the same statute. The pertinent inquiry in deciding whether this is acceptable in the face of constitutional guarantees against double jeopardy then becomes defining the correct unit of prosecution. Bell v. United States, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955).
“ ‘ “A single crime cannot be divided into two or more offenses and thereby subject the perpetrator to multiple convictions for the same offense. Const. of 1901, Art. I, § 9; U.S. Const. Amend. V.” Ex parte Darby, 516 So.2d 786, 787 (Ala.1987). Such question of double jeopardy is determined by the following principles:
“ ‘ “It has been aptly noted that ‘the Blockburger [v. United States, 284 U.S. 299 (1932),] test is insufficient where ... the concern is not multiple charges under separate statutes, but rather successive prosecutions for conduct that may constitute the same act or transaction.’ Rashad v. Burt, 108 F.3d 677 (6th Cir.1997). This is because when ‘a defendant is convicted for violating one statute multiple times, the same evidence test will never be satisfied.’ State v. Adel, 136 Wash.2d 629, 965 P.2d 1072 (1998). The ‘appropriate inquiry1 in such a case ‘asks what “unit of prosecution” was intended by the Legislature as the punishable act.... The inquiry re *248 quires us to look to the language and purpose of the statutes, to see whether they speak directly to the issue of the appropriate unit of prosecution, and if they do not, to ascertain that unit, keeping in mind that any ambiguity that arises in the process must be resolved, under the rule of lenity, in the defendant’s favor.’ Commonwealth v. Rabb, 431 Mass. 123, 725 N.E.2d 1036 (2000) (concluding that allegedly multiple drug possessions justify multiple charges if the possessions are sufficiently differentiated by time, place or intended purpose, the case here regarding defendant’s possession of drugs at his residence for immediate sale and his possession of drugs at motel for future sales).”
“ ‘4 Wayne R. LaFave et al., Criminal Procedure § 17.4(b), 2001 Pocket Part n. 66 (2d ed.1999). See also Project, “Twenty-Ninth Annual Review of Criminal Procedure,” 88 Geo. L.J. 879, 1293 (2000) (“when the government seeks to prove that a single act or occurrence results in multiple violations of the same statute, the rule of lenity requires only one punishment unless legislative intent to impose multiple punishments is shown”).’
“Townsend v. State, 823 So.2d 717, 722 (Ala.Crim.App.2001) (footnote omitted).
[[Image here]]
“The act rendered illegal by the statute — the possession of any obscene matter, even if the possession is of multiple pieces of obscene matter — is simultaneous and inseparable, more like the simultaneous, single act of transportation or importation of multiple pieces of obscene matter, see United States v. Meyer, 602 F.Supp. 1480 (S.D.Cal.1985), than the separate transactions involved in the distribution of multiple pieces of obscene matter, see King v. State, 674 So.2d 1381 (Ala.Crim.App.1995). Thus the unit of prosecution is the simultaneous possession of a collection of obscene material; in this case, there was but one possession.”
883 So.2d at 715-17 (footnote omitted).
However, in 2006, the Alabama Legislature amended § 13A-12-190, Ala. Code 1975, by, among other things, adding subsection (16), which provides that “[t]he depiction of an individual less than 17 years of age that violates this division [which includes § 13A-12-192] shall constitute a separate offense for each single visual depiction.” Thus, the legislature has now, unlike when this Court decided Girard in 2002, clearly spoken to the issue of the proper unit of prosecution, and determined that each individual depiction, i.e., each image and/or each video, constitutes a separate offense of possession of obscene matter. This amendment has superseded this Court’s holding in Girard regarding the proper unit of prosecution under § 13A-12-192. Therefore, pursuant to § 13A-12-190(16), Ala.Code 1975, C.B.D. was properly adjudicated delinquent on 11 counts of possession of obscene matter.
Based on the foregoing, the judgment of the juvenile court is affirmed.
APPLICATION FOR REHEARING OVERRULED; OPINION OF SEPTEMBER 30, 2011, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
WELCH, P.J., and WINDOM, BURKE, and JOINER, JJ., concur.

. This is the second appeal in this case. As explained in detail below, the juvenile court initially granted C.B.D.’s motion to suppress certain evidence, and the State appealed that ruling to this Court. This Court reversed the ruling on the motion to suppress and remanded the case for further proceedings. State v. C.B.D., 71 So.3d 717 (Ala.Crim.App.2009). We take judicial notice of this Court’s records from the previous appeal. See Hull v. State, 607 So.2d 369, 371 (Ala.Crim.App.1992) (this Court may take judicial notice of its own records).

. See Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and § 12-15-202, Ala.Code 1975.

. We note that Sgt. Rafferty attempted to testify regarding the specific information he had received from the CAC, but C.B.D. objected on hearsay grounds, and the juvenile court sustained the objection and limited Sgt. Raf-ferty’s testimony, instructing Sgt. Rafferty not to testify about "the specifics of what they actually told him.” (R. 28.)

. C.B.D. also argued that the juvenile court had properly refused to continue the hearing to allow the State to secure its main witness, who was out of town the day of the initial hearing because of a family emergency. Based on this Court’s decision in State v. C.B.D. and the proceedings that occurred in the juvenile court after that decision, that argument is now moot.

. C.B.D. did lodge several hearsay and relevancy objections.

. As explained in note 3, supra, the State attempted to present testimony from Sgt. Raf-ferty regarding exactly what information he had received from the CAC, but C.B.D. objected on hearsay grounds and the juvenile court agreed with C.B.D. and prohibited any testimony regarding the specific information Sgt. Rafferty had received. In addition, the State attempted to present testimony regarding the nature of the other children’s allegations against C.B.D., but C.B.D. again objected on hearsay grounds, and the juvenile court again agreed with C.B.D. and prohibited any testimony regarding the nature of those allegations. C.B.D.'s hearsay objections, however, were baseless, and the juvenile court's rulings were incorrect. See, e.g., Washington v. State, 922 So.2d 145 (Ala.Crim.App.2005) (probable cause for warrant may be based on hearsay from reliable source); Woods v. State, 789 So.2d 896 (Ala.Crim.App.1999) (hearsay testimony admissible at suppression hearing), aff'd, 789 So.2d 941 (Ala.2001); and Tierce v. State, 396 So.2d 1090, 1091 (Ala.Crim.App.1981) ("Hearsay testimony, however, is of course, admissible at a suppression hearing for the purpose of establishing probable cause.”). C.B.D. cannot fault the State for not presenting evidence of the exact information Sgt. Rafferty received from the CAC that was included in the affidavit when he, himself, successfully prevented the State from doing so. Such a tactic is, by definition, invited error. See, e.g., Fountain v. State, 586 So.2d 277, 282 (Ala.Crim.App.1991) ("A defendant cannot invite error by his conduct and later profit by the error.”).